UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WOOLERY & CO., PLLC,<br><br>Plaintiff,<br><br>-against-<br><br>4M INVESTMENTS, LLC and TED B. MILLER, JR.,<br><br>Defendants. | CASE NO.: 1:25-cv-00985 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR APPROVAL TO REDACT AND SEAL PORTIONS OF EXHIBIT 1 TO DEFENDANTS' NOTICE OF REMOVAL**

**BAKER & HOSTETLER LLP**
Patrick T. Campbell
Luke E. Record
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
pcampbell@bakerlaw.com
lrecord@bakerlaw.com

*Attorneys for Defendants 4M Investments, LLC and Ted B. Miller, Jr.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................ 1

STATEMENT OF FACTS ........................................ 2

LEGAL STANDARD ........................................ 7

ARGUMENT ........................................ 8

**I.** The Confidential Information Deserves Minimal, if Any, Presumption of Access ........ 8

**II.** Defendants' Interests in Maintaining Confidentiality Over the Confidential Information Outweigh Any Presumption of Access That May Otherwise Attach ........ 10

CONCLUSION ........................................ 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alexander Interactive, Inc. v. Adorama, Inc.*,
No. 12 Civ. 6608, 2014 WL 4346174 (S.D.N.Y. Sept. 2, 2014) ....................11

*Gelb v. Am. Tel. & Tel. Co.*,
813 F. Supp. 1022 (S.D.N.Y.1993) ....................11

*Graczyk v. Verizon Commc'ns, Inc.*,
No. 18-cv-6465, 2020 WL 1435031 (S.D.N.Y. Mar. 24, 2020) ....................7, 9

*KeyBank Nat'l Ass'n v. Element Transp. LLC*,
16 civ. 8958, 2017 WL 384875, at *3 (S.D.N.Y. Jan. 26, 2017) ....................9

*Liu v. Nielsen Co. (US) LLC*,
No. 22-cv-9084, 2023 WL 3750116 (SDNY June 1, 2023) ....................9

*Lugosch v. Pyramid Co. of Onondaga*,
435 F.3d 110 (2d Cir. 2006) ....................7, 8, 10, 12

*Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*,
2015 WL 4298572 (S.D.N.Y. July 15, 2015) ....................11

*Richmond v. Montefiore Medical Center*,
No. 21 Civ. 8700, 2023 WL 6211978 (S.D.N.Y. Sept. 25, 2023) ....................10

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995) ....................7, 9

*United States v. Glens Falls Newspapers, Inc.*,
160 F.3d 853 (2d Cir. 1998) ....................9, 10

**Statutes**

28 U.S.C. § 1446(a) ....................1

**Rules**

New York Rule of Professional Conduct 1.6 ....................10

Defendants 4M Investments, LLC ("4M Investments") and Ted B. Miller, Jr. respectfully submit this memorandum of law in support of their motion to redact and seal information contained in portions of Exhibit 1 to their Notice of Removal, ECF No. 1.

**PRELIMINARY STATEMENT**

On December 24, 2024, Plaintiff Woolery & Co., PLLC filed this action in New York County Supreme Court seeking relief on a limited issue: specific enforcement of a term of its Engagement Agreement with 4M Investments that purports to require advancement of legal fees should a dispute ever arise between the parties. (Declaration of Patrick T. Campbell ("Campbell Decl.") ¶ 14). A dispute has arisen between the parties, currently being litigated in the Southern District of Texas, concerning Plaintiff's claim that Defendants owe it over $2 million in legal fees for work regarding a proxy solicitation in Delaware that was outside of the scope of the Engagement Agreement between the parties.

In its Complaint and Exhibits B-D to the Complaint, Plaintiff included privileged and confidential attorney client communications, litigation strategy, and terms of the confidential settlement agreement that resolved the Delaware matter ("Confidential Information"), without redacting this information from the public filings. Before removing to this Court, Defendants vigorously tried to obtain an order from the state court redacting and sealing Defendants' Confidential Information from the public docket. As 28 U.S.C. § 1446(a) requires a removing party to submit the pleadings filed in the state court action sought to be removed, to prevent the harm further continued public disclosure of their Confidential Information would cause them, Defendants submitted versions of the Complaint and its Exhibits B-D that include redactions of their Confidential Information in Exhibit 1 of their Notice of Removal (ECF No. 1-1) and seek an order from this court approving those redactions and sealing the unredacted versions of the

Complaint and its Exhibits B-D. Attached to this motion are the unredacted copies of the Complaint and its Exhibits B-D (Campbell Decl. Exs. 1-4) that Defendants request remain sealed.

As further set forth below and in the accompanying Campbell Decl., the Confidential Information does not contain any information specifically bearing on the issues in this case—Defendants' purported obligations to advance Plaintiff's attorney's fees. On the other hand, Defendants will be irreparably harmed by any continued public disclosure of its attorney-client communications and confidential settlement terms on the public docket. Defendants' proposed redactions are narrowly tailored to address their concerns.

Accordingly, Defendants' Motion for Approval to Redact and Seal Portions of Exhibit 1 to Defendants' Notice of Removal should be granted.[1] By email dated February 3, 2025, Defendants' counsel asked Plaintiff's counsel for Plaintiff's position concerning this motion. Plaintiff responded that it "does not oppose redaction of the [C]omplaint and its Exhibits B-D as identified in Exhibits 1-4 of the Campbell Affirmation[2] subject to Plaintiff's reservation of all rights, including the right to challenge whether the redacted material is confidential at a later time," and further noted that it "reserve[s] all rights as to whether or not removal is proper."

## **<u>STATEMENT OF FACTS</u>**

On September 12, 2023, 4M Investments engaged Plaintiff for legal services in connection with a proxy fight involving a publicly-traded, Houston-based company. (Campbell Decl. ¶ 5). The Engagement Agreement sets forth two-phase fixed fee structure and additional "success" and

---

[1] 4M Investments, a Delaware limited liability company with its principal place of business in Houston, Texas, and Mr. Miller, an individual residing in Harris County, Texas, make this motion solely for the purpose of protecting their confidential information from public disclosure in a New York court. By making this Motion, Defendants do not waive any defenses, including lack of personal jurisdiction, they have against the Complaint, and will raise those defenses by the required time.

[2] These redactions are the ones now identified in Exhibit 1 of Defendants' Notice of Removal.

"fundraising" fees (that were never earned). (*Id.*) The Engagement Agreement also provided that, "In the unlikely event a dispute should arise, between [4M Investments] and Woolery & Co, the advancement of any reasonable fees for the resolution of such dispute, whether arbitration or otherwise, is required." (*Id.*).

In connection with the proxy fight, on February 28, 2024, Mr. Miller and another party, Boots Capital Management, LLC ("Boots Capital"), filed a complaint in the Delaware Chancery Court (the "Delaware Litigation"). (*Id.* ¶ 7). James Woolery, a New York attorney and the founding partner of Plaintiff, was listed as "of counsel" to Mr. Miller and Boots Capital, but they were not lead counsel in the lawsuit. (*Id.*). On October 2, 2024, Mr. Miller, Boots Capital, 4M Investment, and other parties entered into a Confidential Settlement Agreement and Release (the "Confidential Settlement Agreement") that resolved the Delaware Litigation. (*Id.* ¶ 9). The Confidential Settlement Agreement has a confidentiality clause that requires its parties to keep confidential the contents, terms, and provisions of the agreement, except that, among other things, the agreement could be disclosed to the party's attorneys, accountants, auditors, or insurers who are bound by an agreement or a professional duty of confidentiality to keep the settlement terms confidential. (*Id.*). Mr. Woolery, whose firm was still engaged by 4M Investments at the time, received notice of the agreement. (*Id.*).

On May 15, 2024, notwithstanding already receiving more than $1,000,000 in fees pursuant to the Engagement Agreement's flat fee structure, Plaintiff invoiced Boots Capital, who was not a party to the Engagement Agreement, for an additional $2,107,250 ("May 15 Invoice"). (*Id.* ¶ 8). This invoice was disputed and not paid because it was issued to a party who never entered into an engagement agreement with Plaintiff, and in any event charged fees that were unreasonable and outside of the scope of the Engagement Agreement's fee model. (*Id.*).

On November 5, 2024, Defendants, Boots Capital, and another party commenced an action in Texas state court in the matter styled *Boots Cap. Mgmt., LLC v. Woolery & Co. PLLC*, Cause No. 2024-77928 (the "Texas Litigation"), seeking a declaratory judgment that 4M Investments was the only party with an Engagement Agreement with Plaintiff and that no party is liable, at law or equity, for Plaintiff's May 15 Invoice. (*Id.* ¶ 10). On November 22, 2024, Plaintiff sent a letter to Defendants' Texas counsel (Compl., Ex. B) demanding payment of its May 15 Invoice and, pursuant to the Engagement Agreement, claiming entitlement to the advancement of reasonable expenses incurred in defending itself in the Texas Litigation. (Campbell Decl. ¶ 11). But the letter also included false and defamatory allegations against Defendants and a lengthy (and inaccurate) record of the proceedings to that date that included several references to confidential attorney-client communications, litigation strategy in connection with the Delaware Litigation, and the Confidential Settlement Agreement payment amount. (*Id.*). Plaintiff also threatened to notify the counterparties to the Confidential Settlement Agreement of its potential claims and move forward with litigation if Defendants did not pay the May 15 Invoice for $2,107,250, along with an additional $600,000 under the Engagement Agreement for attorney's fees for alleged legal services during the period of June 13, 2024 through October 12, 2024 (plus interest) by December 2, 2024. (*Id.*).

On November 27, 2024, Defendants' Texas counsel responded to the November 22 letter (Compl., Ex. C), disputing its factual contents and allegations and theory of its purported case. (Campbell Decl. ¶ 12). Defendants' Texas counsel also advised Plaintiff that should it disclose confidential information that it gleaned by virtue of its representation of Defendants, it would be in violation of its duties to maintain its client confidences and secrets, and asked Plaintiff to confirm in writing that it intended to honor its confidentiality obligations. (*Id.*). On December 2,

2024, Plaintiff responded to the November 27 letter (Compl., Ex. D), stating that it was cognizant of its obligations to maintain client confidentiality and has no intent of violating those obligations. (Campbell Decl. ¶ 13).

Despite that representation, Plaintiff publicly filed its letter correspondence with Defendants in New York County Supreme Court as exhibits to the Complaint in this action, without a single redaction of the Confidential Information they include or reflect. (*Id.* ¶ 14). To make matters worse, Plaintiff also discussed the Confidential Settlement Agreement payment amount in paragraph 16 of the Complaint without redaction. (*Id.*). While Defendants' Confidential Information has nothing to do with the narrow relief Plaintiff seeks in this action,[3] its continued public disclosure will cause irreparable harm to Defendants. (*Id.* ¶ 22).

In state court, Defendants vigorously attempted to obtain an order redacting the Confidential Information from the Complaint and its Exhibits B-D before filing their Notice of Removal to this Court. On January 17, 2025, Defendants filed an Order to Show Cause seeking an order redacting and sealing the last sentence of paragraph 16 of the Complaint and wholly sealing Exhibits B-D to the Complaint (or, alternatively, directing Defendants to submit redacted versions of Exhibits B-D). NYSCEF No. 7. On January 20, 2025, Defendants filed a Request for Restricted Status to temporary restrict the Complaint and its Exhibits B-D to viewing by court staff and the parties only. NYSCEF No. 12. The state court declined to sign the Order to Show Cause,

[3] Plaintiff has removed the Texas Litigation to the Southern District of Texas in the matter styled *Boots Cap. Mgmt. v. Woolery & Co. PLLC*, Civil Action No. 4:24-cv-05120, and also sought permission to assert counterclaims against Defendants and the other two parties to the Texas Litigation for the attorney's fees it claims they owe. Plaintiff has also sought to dismiss the declaratory action brought by Defendants and the two other parties for lack of personal jurisdiction. The action in this Court has nothing to do with the merits of Plaintiff's attorney's fees claims, rather the underlying dispute here solely concerns whether Defendants have an obligation to advance attorney's fees to Plaintiff pursuant to the Engagement Agreement.

apparently because Defendants' counsel's supporting affirmation was not titled "Emergency Affirmation" (although the supporting affirmation did describe the irreparable harm any continued public disclosure of Defendants' Confidential Information would cause). NYSCEF No. 13. After Defendants filed the January 17 Order to Show Cause, the parties conferred and agreed upon narrowly-tailored redactions to the Complaint and its Exhibits B-D, and on January 29, 2025, Defendants filed another Order to Show cause seeking an order redacting the Complaint and Exhibits B-D as identified in the agreed-upon redactions and sealing the unredacted versions of the Complaint and Exhibits B-D. NYSCEF No. 15. Defendants also filed another Request for Restricted Status on January 29. NYSCEF No. 14. The state court again declined to sign the Order to Show Cause, apparently finding that Defendants did not cite an emergency. NYSCEF No. 22. The state court did not rule on the merits of Defendants' requested relief and instructed them to seek the redacting and sealing order by notice of motion, which Defendants did on January 31, 2025. NYSCEF No. 23.

As of the date of this filing, the Complaint and Exhibits B-D remain in "Temporarily Restricted" status on the state court docket. However, because of the applicable time limits, Defendants needed to file their Notice of Removal before the state court decides their motion to redact and seal. Accordingly, to protect Defendants' privileged and confidential information from any further public disclosure in this Court, Defendants attached the redacted versions of the Complaint and its Exhibits B-D that they agreed to with Plaintiff and submitted to the state court in Exhibit 1 of their Notice of Removal and make this motion for approval of those redactions and to seal the unredacted copies of those materials that are attached to this Declaration. (Campbell Decl. ¶ 21).

Defendants note that Plaintiff also publicly field without redaction Defendants' Confidential Information in the Texas Litigation. Plaintiff filed what is in this action Exhibit B to the Complaint as an exhibit to its motion to dismiss Defendants' declaratory judgment action in the Southern District of Texas. Defendants moved to seal that document and the court ordered the letter to be sealed, in addition to requiring that any future submissions containing or referencing "Confidential Information," including but not limited to, the information contained within the letter, the Confidential Settlement Agreement, and any privileged or confidential information gleaned by Plaintiff in its representation of Defendants, be filed under seal only. (Campbell Decl. ¶ 17).

## **LEGAL STANDARD**

Judicial documents are presumptively subject to public inspection. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). However, sealing or redacting judicial documents is appropriate where "closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Graczyk v. Verizon Commc'ns, Inc.*, No. 18-cv-6465, 2020 WL 1435031, at *8 (S.D.N.Y. Mar. 24, 2020) (quoting *Lugosch,* 435 F.3d at 119).

The Second Circuit applies a three-step process for determining whether sealing is appropriate. First, the court must determine that the records sought to be sealed are "judicial documents," because only judicial documents are afforded a presumption of public access. *Lugosch*, 435 F.3d at 119. "Judicial documents" are items "relevant to the performance of the judicial function and useful in the judicial process." *Id*. Second, if the court decides that the item to be sealed is a judicial document, the court must then determine the weight of the presumption of access, which depends on the materiality of the information in resolving the dispute. *Id*. "Generally, the information will fall somewhere on a continuum from matters that directly affect

an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id*. (internal quotation marks omitted); *see also United States v. Amodeo*, 71 F.3d 1044, 1048-49 (2d Cir. 1995) (noting that the weight of the presumption will vary depending on where on the "continuum" the confidential information falls, with the greatest weight given when the information "directly affect[s] an adjudication"). "Finally, after determining the weight of the presumption of access, the court must balance competing considerations against it." *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted). "Such countervailing factors include but are not limited to the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id*. (internal quotation marks omitted).

## ARGUMENT

### I. The Confidential Information Deserves Minimal, if Any, Presumption of Access

As a threshold matter, Complaint Exhibits B-D should not be considered "judicial documents," as they do not contain information that is "relevant to the performance of the judicial function and useful in the judicial process." However, assuming for the purposes of this motion that each of the Complaint and its Exhibits B-D are judicial documents, little, if any, presumption of access should attach to the Confidential Information Defendants seek to redact from them. The Confidential Information has no bearing on the determinative issues in this action—namely whether Defendants are required to advance Plaintiff's attorney's fees under the Engagement Agreement.

The redacted Confidential Information traces back to the Confidential Settlement Agreement, to which the public, by agreement among all parties, was excluded from accessing. Despite clear legal standards of what ought to be filed under seal and unambiguous ethical obligations, Plaintiff has nevertheless put into the public record extraneous correspondence that include information derived from confidential attorney-client communications, litigation strategy

in connection with the Delaware Litigation, and other information Plaintiff gained through its representation of Defendants that, at most, may relate to the merits of the parties underlying dispute in Texas. (Campbell Decl. ¶ 20). For example, information concerning Defendants' legal strategy leading to the execution of the Confidential Settlement Agreement and the resulting settlement figure sheds no light on the question of whether the advancement clause in the Engagement Agreement is enforceable. *See Graczyk*, 2020 WL 1435031, at *2 (finding the "presumption in favor of public access is low" for financial information in contracts that had no bearing on the issue before the court); *Amodeo*, 71 F.3d at 1050 ("Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason."); *KeyBank Nat'l Ass'n v. Element Transp. LLC*, 16 civ. 8958, 2017 WL 384875, at *3 (S.D.N.Y. Jan. 26, 2017) (document's "irrelevance to the issues before the Court . . . places the presumption of public access at the nadir of the continuum of the weight to be given to the presumption"). In particular, courts generally afford little to no presumption of public access to the terms of confidential settlements and frequently seal that information. *See, e.g., United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 858 (2d Cir. 1998) ("[T]he presumption of access to settlement negotiations, draft agreements, and conference statements is negligible to nonexistent"); *see also Liu v. Nielsen Co. (US) LLC*, No. 22-cv-9084, 2023 WL 3750116, at *2 (SDNY June 1, 2023) ("[T]here is no established presumption of public access with respect to confidential settlement discussions and documents.") (citation omitted).

Accordingly, the presumption of access to the redacted Confidential Information should be given very little weight, if any.

## II. Defendants' Interests in Maintaining Confidentiality Over the Confidential Information Outweigh Any Presumption of Access That May Otherwise Attach

Even assuming the Court were to ascribe some degree of the presumption of access to the Confidential Information, Defendants' strong countervailing interests in maintaining confidentiality over the Confidential Information outweighs any public interest in the redacted material.

It is well settled that information subject to attorney-client privilege may serve as a "compelling reason" to defeat any presumption of access, especially when, as here, the moving party is not the party who placed the information in the record in the first place. *See Lugosch*, 435 F.3d at 125. This principle accords with the attorney-client privilege's vital importance of encouraging full and frank conversations between attorneys and clients and counsel's strict ethical obligations to keep confidential "not only [] matters communicated in confidence by [Defendants] . . . but also [] all information gained during and relating to the representation, whatever its source." *See* New York Rules of Professional Conduct, Rule 1.6 at Comment 3.

In addition to Defendants' attorney-client privilege, disclosure of the Confidential Information jeopardizes a core commitment made by all parties to the Confidential Settlement Agreement: to keep the settlement information confidential. (Campbell Decl. ¶ 9). For example, a portion of the redacted Confidential Information goes to the very heart of the Confidential Settlement Agreement—the confidential settlement amount. Courts routinely seal information related to confidential settlement agreements, and Plaintiff's references to the Confidential Settlement Agreement payment amount should be redacted and sealed here as well. *See, e.g.*, *Richmond v. Montefiore Medical Center*, No. 21 Civ. 8700, 2023 WL 6211978, at *8 (S.D.N.Y. Sept. 25, 2023) (sealing confidential settlement agreement involving third party and accompanying communications). Indeed, few if any cases would be settled if the public were privy to confidential

settlement terms that the parties intended were to be and remain confidential. See *Glens Falls Newspapers,* 160 F.3d at 858.

Furthermore, disclosure of the Confidential Information jeopardizes Defendants' ability to successfully negotiate any future disputes. (Campbell Decl. ¶ 20). Publicly revealing details concerning Defendants' settlement strategy and the amount for which they were willing to settle could undermine Defendants' negotiating power moving forward and put them at a competitive disadvantage. *See, e.g., Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654, 2015 WL 4298572, at *4 (S.D.N.Y. July 15, 2015) (permitting redaction of information in patent license agreement minimally relevant to parties' claims that contains "commercially sensitive information" that would "competitively disadvantage both parties to the agreement"); *Gelb v. Am. Tel. & Tel. Co.*, 813 F. Supp. 1022, 1035 (S.D.N.Y.1993) (noting that "defendants' assertion that its competitors . . . could use [the information] to do competitive injury to the defendants is, on the facts of this case, a sufficient basis" for sealing). Surely Defendants' interest in maintaining their contractual obligations under the Confidential Settlement Agreement qualifies as the sort of compelling interest worthy of sealing. Defendants also have a significant commercial interest in honoring their legal commitments: should Defendants fail to do so, it would irreparably harm their investment relationships, their reputation, and their business as a whole. (Campbell Decl. ¶ 20). Indeed, the other parties that entered into the Confidential Settlement Agreement are entitled to privacy interests of their own, which courts have routinely recognized on applications to seal. *See, e.g.*, *Alexander Interactive, Inc. v. Adorama, Inc.*, No. 12 Civ. 6608, 2014 WL 4346174 at *2 (S.D.N.Y. Sept. 2, 2014) (allowing documents containing confidential information concerning the business relationship between defendant and a non-party entity to be filed under seal).

Finally, Plaintiff clearly believes that the disclosure of the Confidential Information may cause grave harm to Defendants, acknowledging at various points the deleterious effects that could arise in the event that such Confidential Information were disclosed, including significant financial and legal repercussions and a potential unwinding of the agreement. See Compl., Ex. D, at 6. In order to protect the integrity of the Confidential Settlement Agreement, Defendants refrained from filing it and other pertinent agreements in the Texas Litigation, and instead sought the protection of a confidentiality order. Quite to the contrary, Plaintiff threatened to disclose Confidential Information to the counterparties to the Confidential Settlement Agreement. And with this action, Plaintiff has now carried out that threat by disclosing the Confidential Information in an attempt to inflict damage on Defendants.

Defendants' proposed redactions to the Complaint and its Exhibits B-D are narrowly tailored to protect *only* the privileged and confidential attorney-client communications, litigation strategy, and terms of the Confidential Settlement Agreement that they contain, reference, or reflect, which in any event have no bearing on the issues in this case. Defendants' interests in maintaining confidentiality over such information far outweighs the minimal, if any, presumption of access afford to the information. *Lugosch*, 435 F.3d at 120. In granting Defendants' motion to seal Complaint Exhibit B in the Texas Litigation, the Southern District of Texas has already found that Defendants' interests in protecting the Confidential Information from public disclosure outweigh the common law right of public access to judicial documents. Defendants' respectfully request the Court to take similar action here and approve the redactions made to the Confidential Information in the Complaint and its Exhibits B-D as filed in Exhibit 1 of the Notice of Removal and seal the unredacted versions (Campbell Decl. Exs. 1-4) of these materials.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court grant their Motion for Approval to Redact and Seal Portions of Exhibit 1 to Defendants' Notice of Removal.

Dated: February 3, 2025
New York, New York

**BAKER & HOSTETLER LLP**

By: */s/ Patrick T. Campbell*
Patrick T. Campbell
Luke E. Record
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
pcampbell@bakerlaw.com
lrecord@bakerlaw.com

*Attorneys for Defendants 4M Investments, LLC and Ted B. Miller, Jr.*

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing document complies with the word count limit set forth in Local Civil Rule 7.1. I relied on the word count of the word-processing system used to prepare the document. The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 3,726 words.

Dated: February 3, 2025
New York, New York

**BAKER & HOSTETLER LLP**

By: */s/ Patrick T. Campbell*

Patrick T. Campbell
Luke E. Record
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
pcampbell@bakerlaw.com
lrecord@bakerlaw.com

*Attorneys for Defendants 4M Investments, LLC and Ted B. Miller, Jr.*