UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------X

WOOLERY & CO., PLLC,

                Plaintiff,

     -against-

4M INVESTMENTS, LLC and TED B.
MILLER, JR.,

               Defendants.

-----------------------------------------------------X

Case No.: 1:25-cv-00985-MKV

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFF'S AMENDED VERIFIED COMPLAINT

**BAKER & HOSTETLER LLP**
Patrick T. Campbell
Luke E. Record
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
pcampbell@bakerlaw.com
lrecord@bakerlaw.com

*Attorneys for Defendants 4M*
*Investments, LLC and Ted B. Miller, Jr.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

BACKGROUND .................................................................................................2

ARGUMENT .....................................................................................................5

I.     The Amended Complaint Should Be Dismissed Under Rule 12(b)(2) Because it
       Fails to Allege Personal Jurisdiction Over Defendants ........................................6

       A.     Plaintiff's Claims in This Litigation Are Not Substantially Related to Any
              Actions Alleged to Have Occurred in New York ....................................8

       B.     Defendants Do Not Have Sufficient Minimum Contacts With New York ............9

       C.     Subjecting Defendants to Personal Jurisdiction Would Offend Traditional
              Notions of Fair Play and Substantial Justice.......................................15

II.    The Amended Complaint Should Be Dismissed for Improper Venue Under Rule
       12(b)(3) .........................................................................................15

III.   The Amended Complaint Should Be Dismissed Under Rule 12(b)(6) Because the
       Fee Advancement Provision Is Void as Against Public Policy .........................17

       A.     All Claims Fail as Against Miller Because He Was Not a Party to the
              Engagement Agreement.............................................................17

       B.     The Fee Advancement Provision Is Void as Against Public Policy.....................17

       C.     Plaintiff Fails to State a Claim for Account Stated................................20

IV.    This Action Should Be Dismissed or Transferred to Texas Under the First-to-File
       Rule ..............................................................................................21

CONCLUSION...................................................................................................23

**<u>TABLE OF AUTHORITIES</u>**

<u>Page(s)</u>

**Cases**

*Air Atlanta Aero Engineering Ltd. v. SP Aircraft Owners I, LLC*,
  637 F. Supp. 2d 185 (S.D.N.Y. 2009)......................................................................21

*Altruis Grp., LLC v. Prosight Specialty Mgmt. Co.*,
  No. 1:21-cv-10757, 2023 WL 2242048 (S.D.N.Y. Feb. 27, 2023) .......................20

*Anders v. Verizon Commc'ns Inc.*,
  No. 16-CV-5654, 2018 WL 2727883 (S.D.N.Y. June 05, 2018) .....................17, 18

*Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cty.*,
  480 U.S. 102 (1987)................................................................................................8

*Aybar v. Aybar*,
  37 N.Y.3d 274 (2021)..............................................................................................6

*Best Van Lines, Inc. v. Walker*,
  490 F.3d 239 (2d Cir. 2007)..................................................................................7, 9

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016)....................................................................................9

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)..............................................................................................7, 8

*Burns v. County of Nassau*,
  337 F. Supp. 3d 210 (E.D.N.Y. 2018) ...................................................................22

*Catlin Indem. Co. v. New England Law/Boston*,
  No. 15-CV-4836, 2016 WL 447849 (S.D.N.Y. Feb. 04, 2016).......................15, 16

*Daniel v. Am. Bd. of Emergency Med.*,
  428 F.3d 408 (2d Cir. 2005)...................................................................................16

*Ditkoff v. Wolff*,
  No. 24-cv-1955, 2025 WL 919635 (S.D.N.Y. Mar. 26, 2025).............................10

*Edwardo v. Roman Cath. Bishop of Providence*,
  66 F.4th 69 (2d Cir. 2023) ......................................................................................6

*Eric & Co. Trading Group LLC v. Mayweather*,
  No. 1:21-cv-08580-MKV, 2022 WL 3667037 (S.D.N.Y. Aug. 25, 2022).............10

*Everything Yogurt Brands, LLC v. Bianco*,
    No. 23-cv-01161, 2024 WL 3497757 (S.D.N.Y. July 22, 2024)............................................13

*Fire & Police Pension Ass'n of Colo. v. Bank of Montreal*,
    368 F. Supp. 3d 681 (S.D.N.Y. 2019)....................................................................................12

*Fischbarg v. Doucet*,
    9 N.Y.3d 375 (2007) ...............................................................................................................14

*Five Star Logistics LLC v. Innovasian Cuisine Enters. Inc.*,
    No. 653357/2022, 2022 WL 17155810 (Sup. Ct. N.Y. Cnty. Nov. 22, 2022) ......................13

*Galpern v. De Vos & Co., PLLC*,
    No. 10-CV-1952, 2011 WL 4597491 (E.D.N.Y. Sept. 30, 2011) ..........................................19

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
    564 U.S. 915 (2011).................................................................................................................7

*Grinnell v. Ultimate Realty, LLC*,
    832 N.Y.S.2d 244 (2d Dep't 2007).......................................................................................21

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005)...................................................................................................16

*Homeschool Buyers Club, Inc. v. Brave Writer, LLC*,
    No. 19-CV-6046, 2020 WL 1166053 (S.D.N.Y. Mar. 11, 2020) ............................................9

*Interface Biomedical Labs. Corp. v. Axiom Med., Inc.*,
    600 F. Supp. 731 (E.D.N.Y. 1985) .........................................................................................9

*Jewel America v. Frontstep Sols. Grp., Inc.*,
    No. 02 Civ. 1328, 2002 WL 1349754 (S.D.N.Y. June 20, 2002)...........................................23

*Johnson v. Ward*,
    4 N.Y.3d 516 (2005) ...............................................................................................................7

*Law Off. of Cary Scott Goldfinger, P.C. v. Deluca*,
    219 A.D. 3d 598 (2d Dep't 2023) ..................................................................................11, 14

*Louise Paris, Ltd. v. Fabric Selection, Inc.*,
    No. 17 Civ. 5697, 2017 WL 4776734 (S.D.N.Y. Oct. 6, 2017) ............................................22

*Martin v. Camp*,
    219 N.Y. 170 (1916) ..............................................................................................................18

*Mersen USA EP Corp. v. TDK Elecs. Inc.*,
    594 F. Supp. 3d 570 (S.D.N.Y. 2022*)*..................................................................................17

*Metro. Life Ins. Co. v. Robertson–Ceco Corp.*,
    84 F.3d 560 (2d Cir. 1996) ........................................................................7, 8, 14, 15

*Oikonomos, Inc. v. Bahrenberg*,
    48 Misc. 3d 1228(A), (Sup. Ct. Suffolk Cnty. 2015) ............................................19

*PaineWebber Inc. v. Westgate Grp., Inc.*,
    748 F. Supp. 115 (S.D.N.Y. 1990) ........................................................................11

*Penachio v. Benedict*,
    461 F. App'x. 4 (2d Cir. 2012) ................................................................................6

*Penn Group, LLC v. Slater*,
    No. 07 Civ. 729, 2007 WL 2020099 (S.D.N.Y. June 13, 2007) ............................11

*Permanens Cap., LP v. Bruce*,
    No. 21-CV-10525, 2022 WL 3442270 (S.D.N.Y. July 22, 2022), R&R
    adopted, 2022 WL 4298731 (S.D.N.Y. Sept. 19, 2022) ......................................20

*Peter Lisec Glastechnische Indsutrie Gmbh v. Lenhardt Maschinenbau GmbH*,
    173 A.D.2d 70 (1st Dep't 1991) ............................................................................13

*Pramer S.C.A. v. Abaplus Intern. Corp.*,
    76 A.D.3d 89 (1st Dep't 2010) ..............................................................................14

*Revson v. Cinque & Cinque, P.C.*,
    221 F.3d 59 (2d Cir. 2000) ....................................................................................18

*Shukla v. Sharma*,
    586 F. App'x. 752 (2d Cir. 2014) ..........................................................................19

*Silvertip Cap. (IG) LLC v. Baraka Invest. Ltd.*,
    No. 1:22-cv-10746, 2023 WL 8553884 (S.D.N.Y. Dec. 11, 2023) ....................6, 13

*Spencer-Smith v. Ehrlich*,
    No. 23-cv-02652, 2024 WL 709291 (S.D.N.Y. Feb. 21, 2024) ............................20

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 659 (2d Cir. 2013) ....................................................................................6

*Ticketmaster-New York, Inc. v. Alioto*,
    26 F.3d 201 (1st Cir. 1994) ....................................................................................15

*Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*,
    56 A.D.3d 1 (1st Dep't 2008) ................................................................................18

*Walden v. Fiore*,
    571 U.S. 277 (2014) ..........................................................................................8, 10

*Walters v. Fullwood,*
    675 F. Supp. 155 (S.D.N.Y. 1987)........................................................18

*Ween v. Dow,*
    35 A.D.3d 58 (1st Dep't 2006) ........................................................18, 19

*Zim Am. Integrated Shipping Servs. Co. v. Sportswear Grp., LLC,*
    No. 20-cv-4838, 2021 WL 5450117 (S.D.N.Y. Nov. 18, 2021)............................21

**Statutes**

28 U.S.C. § 1391(b)(1) ........................................................15

28 U.S.C. § 1391(b)(2) ........................................................15, 16, 17

28 U.S.C. § 1404(a) ........................................................17

**Rules**

22 NYCRR § 1200.1.8........................................................19

CPLR § 301........................................................6

CPLR § 302........................................................6

CPLR § 302(a)(1) ........................................................7, 9, 10

Fed. R. Civ. P. 12(b)(2)........................................................6, 17

Fed. R. Civ. P. 12(b)(6)........................................................17

N.Y. RPC 1.8(h)........................................................19

**Other Authorities**

Debra C. Weiss, *Cravath Lawyer Credits Talking Texan for M&A Successes,*
    ABA Journal (Oct. 19, 2009)........................................................12

Restatement (Second) of Contracts §178........................................................18

Defendants 4M Investments, LLC ("4M Investments") and Ted B. Miller, Jr. respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's Amended Verified Complaint (the "Amended Complaint").

## PRELIMINARY STATEMENT

Plaintiff Woolery & Co., PLLC, a New York law firm, and its former clients, a Texas citizen and a Texas business, are engaged in a fee dispute in the Southern District of Texas (the "Texas Action"). Defendants engaged Plaintiff for legal advice in connection with a proxy solicitation in Texas that also involved litigation in Delaware. After Plaintiff demanded payment on an invoice for the Delaware work that was, among other things, unreasonable, Defendants filed an action in Texas state court seeking a declaratory judgment that no party was liable for Plaintiff's invoice. Plaintiff removed the action to the Southern District of Texas and sought leave to assert counterclaims for the fees it claims it is owed.

But this action has nothing to do with the relief at issue in the Texas Action. Rather, the parties' Engagement Agreement included a provision tucked in towards the end that purportedly obligates Defendants to advance Plaintiff's attorney's fees in the event of a dispute between the parties (the "Fee Advancement Provision"). After Defendants sued Plaintiff in Texas, Plaintiff demanded that Defendants advance it its attorney fees to defend against the Texas Action. After Defendants refused to pay, Plaintiff brought this action to enforce the Fee Advancement Provision – in New York, notwithstanding Defendants are Texas citizens, the overarching fee dispute is being litigated in Texas, and there is no connection between Defendants' limited activities in New York and Plaintiff's claim for fee advancement that would subject Defendants to personal jurisdiction in a New York court.

Plaintiff's Amended Complaint should be dismissed for several reasons. First, Plaintiff has not established that this Court has personal jurisdiction over Defendants. The Amended

Complaint does not plead a sufficient nexus between any of Defendants' activities in this State and Plaintiff's claim for advancement of attorney's fees to defend against the Texas Action. To the contrary, the only conduct from which Plaintiff's claim arises – Defendants' initiation of the Texas Action and refusal to pay Plaintiff's legal fees to defend it – occurred solely in Texas. Second, even if this Court could assert personal jurisdiction over Defendants, venue would still be inappropriate in this district because all of the relevant underlying acts occurred in Texas. Third, notwithstanding personal jurisdiction and venue, the Amended Complaint should be dismissed because the Fee Advancement Provision violates New York public policy. Finally, if the Amended Complaint survives all of the above, it should still be dismissed or, at minimum, transferred to Texas under the first-to-file doctrine.

For these reasons and as further set forth below, Plaintiff's Amended Complaint should be dismissed in its entirety with prejudice.

## **BACKGROUND**

The Amended Complaint alleges that in September 2023, Defendants approached Plaintiff for strategic legal and other advice related to a proxy solicitation involving Crown Castle Inc. ("Crown Castle"), a Houston-based public company. Am. Compl. ¶ 12. In 2023, Miller, co-founder and former Executive Chairman and Chief Executive Officer of Crown Castle, became concerned about the company's future and believed that its shareholders deserved better leadership. Decl. of Ted. B. Miller, Jr. in Supp. of Defs.' Mot. to Dismiss the Am. Verified Compl. ("Miller Decl.") ¶ 10. Along with others, Miller decided to take action to further these goals. *Id*.

While Plaintiff alleges it did not solicit Defendants' business, Am. Compl. ¶ 12, undisputed facts show that James C. Woolery, Plaintiff's principal, leveraged his prior relationship with Miller and his Texas corporate transaction experience to solicit Defendants' business in Texas. Prior to the engagement in this case, Miller had known Woolery for over 20 years, beginning when

Woolery performed legal work for Crown Castle while he was an associate at his prior law firm. Miller Decl. ¶ 8. In the years leading up to the engagement, Plaintiff and/or Woolery sent Miller several emails soliciting Defendants' business in Texas, including announcing the launch of Plaintiff and providing new contact details, announcing recent deals in the corporate venture capital and investing space for which he and Plaintiff were engaged, sharing articles and podcasts that featured him and Plaintiff, and in one email just five months before the Engagement Agreement, sending Miller a "Case Study deck" showcasing the types of transactions they have worked on, with the very first example involving a Texas oil and gas company. *Id*. at ¶ 9.

Miller negotiated the Engagement Agreement and executed it in his capacity as President of 4M Investments while in Texas on September 12, 2023. *Id*. at ¶ 11. The Engagement Agreement set forth a two-phased payment structure consisting of (i) fixed monthly fees and (ii) the potential for additional "success" and "fundraising" fees. *Id*. at Ex. G. Most pertinent to this case, the Engagement Agreement states that "In the unlikely event a dispute should arise, between [4M Investments and Plaintiff], the advancement of any reasonable fees for the resolution of such dispute, whether arbitration or otherwise, is required." *Id*. After the execution of the Engagement Agreement, Woolery traveled to Houston, Texas, where the scope of the Engagement Agreement was discussed and 4M Investments agreed to an increase in the monthly fee amount. *Id*. at ¶ 12.

Although Plaintiff alleges that the legal work under the engagement "was intended to be performed, and in fact was performed, in New York," Am. Compl. ¶ 10, the scope of the Engagement Agreement was solely tied to Texas. Plaintiff provided advice for forming Boots Capital Management, LLC ("Boots Capital"), a Texas company with all Texas investors, as the investment vehicle for the Crown Castle proxy solicitation. Miller Decl. ¶ 14. One of Plaintiff's other obligations under the Engagement Agreement was to source potential investors for Boots

Capital, and in doing so Woolery contacted at least one company in Texas for that purpose. *Id*. at ¶ 15. In connection with the proxy solicitation, Plaintiff also allegedly constructed and argued a claim brought by Miller and Boots Capital in the Delaware Chancery Court (the "Delaware Action"). Am. Compl. ¶ 17. The only allegation of any sort Plaintiff makes that relates the substance of the engagement to New York was that Plaintiff met certain prospective Boots Capital investors in New York, and Miller attended one of these meetings. *Id*. at ¶ 16.

Plaintiff claimed that over the course of the Delaware Action, it performed work amounting to $2,107,250.00 (the "May 2024 Invoice"). *Id*. at ¶ 18. Plaintiff submitted that invoice to Boots Capital but Boots Capital refused to pay it because, among other reasons, it charged fees that were unreasonable and Boots Capital was not a party to the Engagement Agreement. Miller Decl. ¶ 17(a). On November 15, 2024, Defendants, Boots Capital, and another company filed an action in Harris County, Texas state court (the Texas Action) seeking a declaratory judgment that, among other things, no party was liable, at law or in equity, for the May 2024 Invoice. *Id*. at ¶ 17(b). After the lawsuit was filed, Plaintiff invoked its purported right under the Fee Advancement Provision for the advancement of its attorney's fees to defend against the Texas Action in a letter its Texas counsel sent to Defendants' Texas counsel. Am. Compl. ¶ 21. Defendants refused to pay.

On December 24, 2024, Plaintiff filed this action in New York County Supreme Court seeking only to enforce their purported rights to fee advancement under the Fee Advancement Provision. With this action, Plaintiff has created an anomalous dual track litigation. On the one hand, the Texas Action continues. On December 30, 2024, Plaintiff removed the Texas Action to the Southern District of Texas and sought leave to assert counterclaims against Defendants and others for payment of the May 2024 Invoice. *Boots Cap. Mgmt. v. Woolery & Co. PLLC*, Civil

Action No. 4:24-cv-05120 (S.D. Tex), ECF No. 1. The parties subsequently have entered into a case management and discovery order, Defendants amended the complaint in that action, and a motion to dismiss by Plaintiff has been fully briefed. *Id.*, ECF Nos. 17, 24-25, 27-28.

Here, Defendants removed the action to this Court based on diversity jurisdiction and, pursuant to the Court's February 10, 2025 Order, Plaintiff amended its complaint, now raising four causes of action all arising under Defendants' purported failure to fund Plaintiff's legal fees to defend against the Texas Action: (i) Breach of Contract; (ii) Specific Performance; (iii) Declaratory Judgment; and (iv) Account Stated. Am. Compl. ¶¶ 25-49. Notably, the Amended Complaint in this action still *does not* seek damages arising from the May 2024 Invoice, but instead solely seeks the advancement of reasonable fees incurred by Plaintiff "by defending itself in the in the Texas Action." *Id.* at ¶ 2. Indeed, all of Plaintiff's causes of action in this case hinge on the enforceability of the Fee Advancement Provision.

## **ARGUMENT**

The Amended Complaint suffers from four independently fatal flaws. First, Plaintiff has not demonstrated that Defendants have the requisite minimum contacts with New York to establish personal jurisdiction. Second, Plaintiff's allegations do not establish the Southern District of New York as the appropriate venue for this case. Third, the Engagement Agreement's Fee Advancement Provision on which Plaintiff's causes of action rely is unenforceable as a matter of law because it is void as against public policy. And finally, under the first-to-file rule, the Amended Complaint should be dismissed or, at a minimum, transferred to the Southern District of Texas, which is the only district with jurisdiction to hear any dispute between Plaintiff and Defendants.

**I.     The Amended Complaint Should Be Dismissed Under Rule 12(b)(2) Because it Fails to Allege Personal Jurisdiction Over Defendants**

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction exists. *Penachio v. Benedict*, 461 F. App'x. 4, 5 (2d Cir. 2012) (summary order). At the pleading stage, while a plaintiff need only make a prima facie showing of jurisdiction, this showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013). In determining whether the plaintiff has met its burden, the court will construe all pleadings and affidavits in the light most favorable to the plaintiff. However, the court will not draw argumentative inferences in the plaintiff's favor or accept as true a legal conclusion couched as a factual allegation. *Id.*

In New York, personal jurisdiction over a defendant in a diversity action may be established only if: (1) the exercise of jurisdiction is appropriate under New York's long-arm statute; and (2) such exercise comports with due process under the Constitution. *Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 73 (2d Cir. 2023). Under New York's long-arm statute, a court may exercise one of two forms of personal jurisdiction: (1) *general jurisdiction* under CPLR 301 when the defendant is "essentially at home in the forum State" or (2) *specific jurisdiction* under CPLR 302 "where there is a sufficient link between the defendant's conduct in the forum and the conduct at issue." *Silvertip Cap. (IG) LLC v. Baraka Invest. Ltd.,* No. 1:22-cv-10746 (MKV), 2023 WL 8553884, at *2 (S.D.N.Y. Dec. 11, 2023).

Plaintiff does not allege, nor can it, that this Court has general jurisdiction over Defendants as they do not have the "continuous and systematic" business affiliations with New York that would render them "essentially at home in the forum state." Miller Decl. ¶¶ 3–6; *see Aybar v. Aybar*, 37 N.Y.3d 274, 289 (2021) ("a court may assert general jurisdiction over [out-of-state

defendants] to hear any and all claims against them when their affiliations with the state are so continuous and systematic as to render them essentially at home in the foreign state.") (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Instead, Plaintiff attempts to allege specific jurisdiction under CPLR 302(a)(1). *See* Am. Compl. ¶ 10. To establish jurisdiction under this section of New York's long-arm statute, Plaintiff must demonstrate that: (1) Defendants transacted business within the state and (2) the cause of action arose from that transaction of business. *Johnson v. Ward*, 4 N.Y.3d 516, 519 (2005). New York courts define "transacting business" as purposeful activity – some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007). A claim will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus or a substantial relationship between the claim asserted and the actions that took place in New York. *Id.* A connection that is "merely coincidental" is insufficient to support jurisdiction. *Id.* at 249.

The constitutional due process inquiry also has two steps. First, the court must determine whether the defendant has sufficient minimum contacts with the forum (the "minimum contacts" inquiry). If such contacts exist, the court then assesses whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice" (the "reasonableness" inquiry). *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996). In assessing a defendant's minimum contacts, like under CPLR 302(a)(1), the crucial question is whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws such that [the defendant] should reasonably anticipate being haled into court there." *Best Van Lines*, 490 F.3d

at 242–43 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The court evaluates the "quality and nature" of the totality of defendant's contacts with the forum state and "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). Importantly, the defendant's conduct in the lawsuit must create a "substantial connection" with the forum, with the connection evaluated on the contacts that the "defendant himself creates with the forum," not plaintiff's contacts. *Id.* at 284 (due process requires, overall, "that a defendant be haled into a court in a forum . . . based on his own affiliation with the [forum], not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the [forum].") (quoting *Burger King*, 471 U.S. at 475).

If a plaintiff meets the minimum contacts test, the court then conducts the reasonableness inquiry. To do so, the court applies a multi-factor test, which includes: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; and (3) the plaintiff's interest in obtaining convenient and effective relief. *Metro. Life Ins.*, 84 F.3d at 568 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano Cty.*, 480 U.S. 102, 113–14 (1987)).

A.     **Plaintiff's Claims in This Litigation Are Not Substantially Related to Any Actions Alleged to Have Occurred in New York**

Plaintiff's claim in this action is narrow – enforcement of its purported right under the Engagement Agreement's Fee Advancement Provision for the fees it has and will expend to defend itself in the Texas Action. Am. Compl. ¶ 2. Plaintiff is not seeking the fees it claims it is owed for its work purportedly performed during the parties' engagement – that is the issue being litigated in the Texas Action. Accordingly, to assert jurisdiction over Defendants in this case, Plaintiff must plead some articulable nexus or substantial relationship between Defendants' activities in New

York and its claims that Defendants have failed to perform their obligations under the Fee Advancement Provision. Any of Defendants' contacts with New York that occurred before or during the engagement are irrelevant. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) (declining to even consider specific jurisdiction in lieu of general jurisdiction because plaintiff's injuries did not arise from defendant's activities in forum).

Despite the opportunity to amend its complaint to add jurisdictional facts, Plaintiff has not alleged the existence of a single act directed at New York out of which its claims arise. Nor can it. The only allegations out of which Plaintiff's claims arose – Defendants' initiation of the Texas Action and refusal to advance Plaintiff's fee to defend that action – all occurred in Texas. This alone precludes jurisdiction in this case. *See Best Van Lines*, 490 F.3d at 253-55 (plaintiff failed to meet "arise from" prong because acts which underlay alleged grievances occurred in Iowa, not New York); *see also Homeschool Buyers Club, Inc. v. Brave Writer, LLC*, No. 19-CV-6046 (VSB), 2020 WL 1166053, at *5 (S.D.N.Y. Mar. 11, 2020) ("Because these allegations only involve transactions occurring prior to the termination of the parties' contract, they cannot support the conclusion that Plaintiff's 'causes of action arise from those business transactions,' as required by section 302(a)(1)."); *Interface Biomedical Labs. Corp. v. Axiom Med., Inc.*, 600 F. Supp. 731, 737 (E.D.N.Y. 1985) (CPLR 302(a)(1) was not satisfied because all contact with New York occurred prior to alleged misappropriation and "did not cause or further the alleged misappropriation of intellectual property rights").

### B. Defendants Do Not Have Sufficient Minimum Contacts With New York

Even if this Court finds a substantial connection between Plaintiff's allegations concerning conduct before and during the parties' engagement and its claims, the totality of its vague and conclusory jurisdictional allegations do not show that Defendants purposely projected themselves into New York. The Amended Complaint's threadbare jurisdictional allegations concerning

Defendants' New York activities are merely that Defendants solicited Plaintiff's legal services knowing that it maintained an office in New York and that the services would be performed in New York by New York attorneys, Defendants sent payments to Plaintiff in New York, the Engagement Agreement is governed by New York law, and Defendants travelled to New York on one occasion to attend a meeting with a prospective investor in Boots Capital. Am. Compl. ¶¶ 10, 16.

None of these alleged activities are of the "nature and quality" that would subject Defendants to the personal jurisdiction of this Court. The crux of Plaintiff's jurisdictional case is that Defendants knowingly engaged a New York law firm. However, the Supreme Court has specifically stated that the "minimum contacts" portion of the constitutional due process analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Eric & Co. Trading Group LLC v. Mayweather*, No. 1:21-cv-08580-MKV, 2022 WL 3667037, at *3 (S.D.N.Y. Aug. 25, 2022) (citing *Walden*, 571 U.S. at 285). Under that standard, "[h]iring an attorney who happens to be based in New York, but who could have performed the same services from an office somewhere else, by itself, is not enough for personal jurisdiction under Section 302(a)(1)." *Ditkoff v. Wolff*, No. 24-cv-1955 (MKV), 2025 WL 919635, at *8 (S.D.N.Y. Mar. 26, 2025).

Here, Plaintiff's location in New York was only incidental to the parties' engagement. Rather, Texas was the hub of the parties' activities and of Plaintiff's contractual performances. The Engagement Agreement says "We are delighted to be engaged by 4M Investments, LLC ("you") to provide you strategic legal and other advice with respect to the formation of a Special Purpose Vehicle ('NewCo') for the purpose of investing in Crown Castle Inc. ('CCI') or other substantial companies in the telecommunications space, sourcing potential capital partners to

participate in the investment . . . and a preliminary proxy plan ('Phase One')." Miller Decl. Ex. G. The very purpose of the engagement, and the first service described in the Engagement Agreement, was for advice concerning the formation of a Special Purpose Vehicle in Texas (Boots Capital – headquartered in Texas and made up solely of Texas citizens) for the purpose of investing in another Texas company, Crown Castle. Another obligation under the Engagement Agreement was "sourcing potential capital partners to participate in the investment[.]" *Id*. As part of Plaintiff's performance of this obligation, Woolery contacted at least one Texas company to solicit its participation. *Id*. at ¶ 15. The Delaware Action, where Plaintiff allegedly developed and successfully argued multiple claims, Am. Compl. ¶ 28, was also fundamentally linked to Texas, as it was related to the Crown Castle proxy solicitation. As such, Plaintiff's location in New York cannot serve as the basis of personal jurisdiction over Defendants. *See Law Off. of Cary Scott Goldfinger, P.C. v. Deluca*, 219 A.D. 3d 598, 600 (2d Dep't 2023) (finding allegations that defendants, out of state clients, communicated with plaintiffs, a New York attorney and his law office, in New York because plaintiffs were domiciled in New York insufficient to confer jurisdiction where defendants were not actively participating in transactions in New York and litigation at issue was in New Mexico).

In relying on Plaintiff's New York location to confer jurisdiction over Defendants, the Amended Complaint fails to allege any actions by Defendants to target their activities related to the engagement in New York that would be sufficient to confer jurisdiction. Plaintiff's allegation that Defendant "solicited Plaintiff's services," *id*. at ¶ 10, is not enough to confer jurisdiction. *See PaineWebber Inc. v. Westgate Grp., Inc.*, 748 F. Supp. 115, 120 (S.D.N.Y. 1990) ("'Get me a New York lawyer,' without more, is not an invocation of in personam jurisdiction in the forum state of the lawyer's practice"); *Penn Group, LLC v. Slater*, No. 07 Civ. 729 (MHD), 2007 WL 2020099,

at *10 (S.D.N.Y. June 13, 2007) ("[E]ven substantial negotiations conducted by mail, telephone, or electronic communications often do not confer jurisdiction.").

Furthermore, this allegation is inaccurate. *Fire & Police Pension Ass'n of Colo. v. Bank of Montreal*, 368 F. Supp. 3d 681, 692 (S.D.N.Y. 2019) ("The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.") (citation omitted). According to documented facts in Miller's Declaration that Plaintiff cannot dispute, Plaintiff and Woolery employed a business strategy to attract Texas clients. An article published in an ABA Journal in 2009 quotes Woolery as saying, "They like me in Texas because I'm from this fancy New York law firm, but I talk Texan."[1] Decl. of Patrick T. Campbell, Ex. A. The article expands on Woolery's ability to "talk Texan" by promoting four examples of his work in Texas, which are described as "buyouts valued at more than $60 billion." *Id*.

In the years leading up to the engagement, Woolery then sent several emails to Miller soliciting his and 4M Investment's business, including announcements about the launch of his law firm and recent deals in the corporate venture capital and investing space in which Plaintiff was engaged and sharing articles and podcasts that featured him and Plaintiff. In one email, just five months before the Engagement Agreement, Plaintiff sent Miller a "Case Study deck" showcasing the types of transactions they have worked on, with the very first example involving a Texas oil and gas company. Miller Decl. ¶ 9(f), Ex. F. These efforts were intentional and persistent, leading to 4M Investment's engagement of Plaintiff.

The mere fact that Plaintiff and 4M Investments entered into the Engagement Agreement is not sufficient to confer jurisdiction either. The Amended Complaint lacks any allegations that

---

[1] *See* Debra C. Weiss, *Cravath Lawyer Credits Talking Texan for M&A Successes*, ABA Journal (Oct. 19, 2009), https://www.abajournal.com/news/article/cravath_lawyer_credits_talking_texan_for_ma_successes#google_vignette
.

Defendants negotiated or executed the Engagement Agreement in New York. Because they did not. Miller was in Texas where he negotiated and signed the Engagement Agreement. In fact, it was Woolery who travelled to Texas to meet with Miller to renegotiate the Engagement Agreement to increase the monthly flat payment amount, another detail omitted in the Amended Complaint. *See Everything Yogurt Brands, LLC v. Bianco*, No. 23-cv-01161 (LJL), 2024 WL 3497757, at *6 (S.D.N.Y. July 22, 2024) (finding no specific jurisdiction in part because defendants did not come to New York to negotiate or execute agreements at issue).

The Amended Complaint's allegation that the Engagement Agreement is governed by New York law, Am. Compl. ¶ 1, also is not sufficient to confer jurisdiction over Defendants. An agreement that New York law would apply does not amount to an agreement to litigate in New York courts should a dispute arise. *See Peter Lisec Glastechnische Indsutrie Gmbh v. Lenhardt Maschinenbau GmbH*, 173 A.D.2d 70, 72 (1st Dep't 1991); *Five Star Logistics LLC v. Innovasian Cuisine Enters. Inc.*, No. 653357/2022, 2022 WL 17155810, at *2 (Sup. Ct. N.Y. Cnty. Nov. 22, 2022). Notably absent from the Engagement Agreement is a *forum selection clause*, which, as this Court has held, could serve as the basis for personal jurisdiction. *Silvertip Cap.*, 2023 WL 8553884, at *3-4 (finding forum selection clause committing parties "to the exclusive jurisdiction of the state and federal courts located in New York" sufficient to find personal jurisdiction). Plaintiff clearly envisaged the possibility of litigation arising between the parties, but failed to draft language requiring, or even suggesting, that such a dispute would play out in New York courts. This further illustrates that Defendants thus had no reason to believe that they would be haled into New York if such a dispute were to arise. Miller Decl. ¶ 13.

The Amended Complaint only alleges two specific actions by Miller directed to New York – remitting payments to Plaintiff in New York and attending one investor meeting with Plaintiff

in New York. However, these two discrete activities, especially when considering the overall conduct of the engagement centered in Texas, are not enough to confer jurisdiction over Defendants. *See Pramer S.C.A. v. Abaplus Intern. Corp.*, 76 A.D.3d 89, 96 (1st Dep't 2010) ("[T]he mere payment into a New York account does not alone provide a basis for New York jurisdiction, especially when all aspects of the transaction occur out of state, absent more extensive New York banking relating to the transaction in issue.") (internal citations omitted); *see also Metro. Life*, 84 F.3d at 570 ("There is no talismanic significance to any one contact or set of contacts that a defendant may have with a forum state; courts should assess the defendant's contacts as a whole.").

Defendant's minimal activities in New York, and the lack of relationship between even those activities and Plaintiff's claims, distinguishes this case from others where courts have found out of state clients sued by their New York attorneys subject to the personal jurisdiction of New York courts. For example, the court in *Fischbarg v. Doucet*, in looking at the "nature and quality" of the defendants' contacts with New York, emphasized their "*solicitation* of plaintiff in New York" as a critical reason for finding personal jurisdiction. 9 N.Y.3d 375, 383 (2007) (emphasis added). Unlike the defendants in *Fischbarg*, Defendants in this action were pursued by Plaintiff (Miller Decl. ¶ 9). S*ee Law Off. of Cary Scott Goldfinger*, 219 A.D. 3d 598 at 600 (distinguishing *Fischbarg* on basis that plaintiff's failed to sufficiently allege that defendants solicited plaintiff's legal services). Moreover, the plaintiff's claims in *Fischbarg* arose out of the defendants' solicitation of and communications with the plaintiff during the engagement, 9 N.Y.3d at 384, whereas here, Plaintiff's claims are disconnected from any activities before or during the parties' engagement.

### C. Subjecting Defendants to Personal Jurisdiction Would Offend Traditional Notions of Fair Play and Substantial Justice

In addition to failing to establish the minimum contacts necessary to satisfy New York's long-arm statute and the first step of the constitutional inquiry, requiring Defendants to simultaneously litigate in New York and Texas over two parts of the same Engagement Agreement, when the facts and circumstances of the underlying dispute occurred outside of New York, would offend "traditional notions of fair play and substantial justice." Furthermore, given the paucity of contacts between Defendants and New York, both in terms of quantity and quality, the more acute the injustice. *See Metro. Life*, 84 F.3d at 569 ("[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction.") (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 210 (1st Cir. 1994)).

Considering the particular set of circumstances of this case, which arises out of an ongoing litigation in Texas, it would be unreasonable and therefore contrary to traditional notions of fair play and substantial justice, to find personal jurisdiction over Defendants. *See Metro. Life*, 84. F.3d at 568.

### II. The Amended Complaint Should Be Dismissed for Improper Venue Under Rule 12(b)(3)

Even if this court has personal jurisdiction over Defendants, which it does not, the Amended Complaint should be dismissed for improper venue under 28 U.S.C. § 1391(b)(2).[2] The plaintiff bears the burden to establish venue. *See Catlin Indem. Co. v. New England Law/Boston*, No. 15-CV-4836 (JMF), 2016 WL 447849, at *3 (S.D.N.Y. Feb. 04, 2016). The Second Circuit

---

[2] The Amended Complaint cites 28 U.S.C. § 1391(b)(1) as grounds for venue, but then parrots the language of § 1391(b)(2). Am. Compl. ¶ 11. As Plaintiff cannot dispute the fact that Defendants are residents of Texas, not New York, which eliminates § 1391(b)(1) as a possible grounds for venue, Defendants assume Plaintiff is attempting to assert venue under § 1391(b)(2).

uses a two-part inquiry for evaluating whether venue is proper under 28 U.S.C. § 1391(b)(2): (i) "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to those claims"; and (ii) "determine whether a substantial part of those acts or omissions occurred in the district where suit was filed." *Id*. at *2 (quoting *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 2005)). "The Second Circuit has cautioned . . . that district courts should take seriously the adjective 'substantial' and keep in mind that the venue statute must be construed 'strictly.'" *Id*. at *2 (cleaned up). To this end, the focus is on the defendant's activities. *See id*. ("That focus [on defendant's actions] is consistent with the purpose of the venue statute . . . to protect a defendant from the inconvenience of having to defend an action in a trial court that is either remote from the defendant's residence or from the place where the acts underlying the controversy occurred.") (cleaned up). Notably, courts impose a stricter standard regarding the quality and degree of contact needed to establish venue than for personal jurisdiction. *See id*. ("It would be error . . . to treat the venue statute's 'substantial part' test as mirroring the minimum contacts test employed in personal jurisdiction inquiries.") (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)).

Applying these standards here, venue is improper in this Court. As described above, the claims Plaintiff brings in this Court concern an alleged breach of the particular provision of the Engagement Agreement that purportedly requires Defendants to advance it attorney's fees incurred in the Texas Action. The only conduct of Defendants that should be considered for purposes of venue is that which is sufficiently related to the nature of the claims asserted. *See id*. Here, the only acts or omissions that give rise to Plaintiff's claims are Defendants' initiation of the Texas Action and their decision not to pay Plaintiff for legal fees it may be incurring during that action.

Because these actions occurred exclusively in Texas, and the very legal fees Plaintiff seeks are being incurred in and are located in Texas, venue in this district is improper.[3]

### III. The Amended Complaint Should Be Dismissed Under Rule 12(b)(6) Because the Fee Advancement Provision Is Void as Against Public Policy

All of Plaintiff's claims should be dismissed under Rule 12(b)(6) because the provision of the underlying contract for these claims, the Fee Advancement Provision, is void as a matter of law. Plaintiff also separately fails to allege a claim for Account Stated.

#### A. All Claims Fail as Against Miller Because He Was Not a Party to the Engagement Agreement

As an initial matter, Plaintiff's claims against Miller should be dismissed because he was not a party to the Engagement Agreement. *See Mersen USA EP Corp. v. TDK Elecs. Inc.*, 594 F. Supp. 3d 570, 582 (S.D.N.Y. 2022*)* ("It is hornbook law that a non-signatory to a contract cannot be named as a defendant in a breach of contract action unless it has thereafter assumed or been assigned the contract.") (citation omitted). Plaintiff's allegation that both Defendants are contractually bound to the Engagement Agreement, Am. Compl. ¶ 26, is plainly contradicted by its terms, which show that the only party who engaged Plaintiff was 4M Investments, Miller Decl. Ex. G.

#### B. The Fee Advancement Provision Is Void as Against Public Policy

Regardless, the Fee Advancement Provision is unenforceable against both Defendants because it is void as against public policy. *See Anders v. Verizon Commc'ns Inc.*, No. 16-CV-5654 (VSB), 2018 WL 2727883, at *9 (S.D.N.Y. June 05, 2018) ("Illegal contracts, or those contrary to public policy, are unenforceable . . . the courts will not recognize rights arising from

---

[3] Even if the Court were to find venue proper under 28 U.S.C. § 1391(b)(2), and assuming the Amended Complaint could survive under Rules 12(b)(2) and (b)(6), which it should not, the Court may and should transfer this case to the Southern District of Texas in the interest of convenience and justice. *See* 28 U.S.C. § 1404(a). It would be a waste of the parties' and Court's resources to litigate this side issue here when the action for which Plaintiff seeks advancement of attorney's fees is being litigated in the Southern District of Texas.

them.") (citation omitted); *see also* Restatement (Second) of Contracts §178. Although there is "no magic formula" for determining when a contractual provision is void as against public policy, it may be deemed so "if the sovereign has expressed a concern for the values underlying the policy implicated." *Anders*, 2018 WL 2727883, at *9 (citing *Walters v. Fullwood*, 675 F. Supp. 155, 161 (S.D.N.Y. 1987)).

Here, Plaintiff owed Defendants a fiduciary duty in light of their attorney-client relationship. *Ween v. Dow*, 35 A.D.3d 58, 62-63 (1st Dep't 2006). This fiduciary relationship "imposes on the attorney the duty to deal fairly, honestly, and with undivided loyalty . . . including maintaining confidentiality, avoiding conflicts of interest, operating competently, safeguarding client property and honoring the clients' interest over the lawyer's." *Id*. at 63. Due to this unique fiduciary relationship, attorneys' obligations to their clients "transcend those prevailing in the commercial marketplace." *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*, 56 A.D.3d 1, 4 (1st Dep't 2008). As such, law firms may not circumscribe their professional obligations by purporting to transform the attorney-client relationship into an arm's length commercial affiliation and their engagement agreements are subject to certain ethical restrictions that cannot be contracted away. *Id*.; *see also Martin v. Camp*, 219 N.Y. 170, 172 (1916) (engagement agreements are scrutinized in ways typical commercial contracts are not because of "peculiar and distinctive features which differentiate" them from ordinary contracts).

In particular, fee arrangements between an attorney and a client are highly scrutinized, and the attorney drafter bears the burden of showing that the fee arrangement was "fair, reasonable, and fully known and understood by the client." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 67 (2d Cir. 2000). Under this heightened scrutiny, non-reciprocal provisions authorizing an attorney to recover fees in a fee dispute with a client have been held to be unreasonable and

unenforceable as a matter of law. *E.g.*, *Ween*, 35 A.D.3d at 63–64; *see also Shukla v. Sharma*, 586 F. App'x. 752, 754 (2d Cir. 2014) (summary order) (confirming rationale of *Ween*). Lawyers are further prohibited from limiting prospectively their individual liability to clients for legal malpractice. *Oikonomos, Inc. v. Bahrenberg*, 48 Misc. 3d 1228(A), at *8 (Sup. Ct. Suffolk Cnty. 2015). Such agreements are prohibited because they "are likely to undermine competent and diligent representation." N.Y. RPC 1.8(h), Cmt. 14 (rule codified at 22 NYCRR 1200.1.8, accompanying commentary amended through Aug. 2, 2022).

The Fee Advancement Provision, in violation of Plaintiff's fiduciary duties and ethical obligations, is unenforceable as a matter of law. Like in *Ween*, its one-sided nature and application in this case inures only to the benefit of Plaintiff and "has the distinct potential for silencing a client's complaint about fees for fear of retaliation for the nonpayment of even unreasonable fees." 35 A.D.3d at 63–64. Indeed, the Fee Advancement Provision here goes beyond the provision in *Ween*, as it appears to require the advancement of attorney's fees *even if the client wins*, thus deterring "even perfectly meritorious actions by offsetting the potential recovery by the costs of litigation." *Galpern v. De Vos & Co., PLLC*, No. 10-CV-1952, 2011 WL 4597491, at *13 (E.D.N.Y. Sept. 30, 2011).

The Fee Advancement Provision is also no different than an agreement to prospectively limit malpractice liability. Raising financial barriers to a suit or defense by a client – i.e. requiring fee advancement – similarly undermines the attorney's competent and diligent representation.

Plaintiff alleges that Defendants were "both sophisticated parties who had extensive experience in this area, and Defendants had full knowledge and understanding of the provision's inclusion and the scope of the obligations this provision created." Am. Compl. ¶ 15. However, a client's "sophistication" and knowledge of a provision in an engagement agreement that is

unethical does not make that provision valid and enforceable, especially when the other party is a fiduciary. *See Spencer-Smith v. Ehrlich*, No. 23-cv-02652 (LJL), 2024 WL 709291 (S.D.N.Y. Feb. 21, 2024) ("A contractual provision may be unenforceable where the public policy in favor of freedom of contract is overridden by another weighty and countervailing public policy in the law of the State, whether found in the Constitution, statutes or decisions of the courts.") (cleaned up). Furthermore, Plaintiff characterizes this sort of advancement provision as "standard . . . industry practice in New York in contracts for these types of services." Am. Compl. ¶ 15. However, Plaintiff cites to no source for this allegation, and we are unaware of any instances in which such a provision has been included in a client engagement letter.

Accordingly, the Fee Advancement Provision is contrary to public policy and therefore unenforceable as a matter of law. Given that all of Plaintiff's claims are premised on the enforceability of the Fee Advancement Provision, all such claims merit dismissal.[4] *See Permanens Cap., LP v. Bruce*, No. 21-CV-10525 (JSR) (RWL), 2022 WL 3442270, at *14 (S.D.N.Y. July 22, 2022) (dismissing claims resting on unenforceable provisions of a contract), R&R adopted, 2022 WL 4298731 (S.D.N.Y. Sept. 19, 2022).

### C.      Plaintiff Fails to State a Claim for Account Stated

Plaintiff's account stated claim is nothing more than an attempt to have a second bite at the apple in the event that its breach of contract claim fails. However, to the extent there even is a "debt" at issue in this case, it arises from, and only from, the Fee Advancement Provision of the Engagement Agreement. Accordingly, Plaintiff's account stated claim is nothing more than a

---

[4] Moreover, Counts II-IV are redundant in light of Count I (i.e., breach of contract claim) and can therefore also be dismissed on account of their duplicative nature, irrespective of the Court's determination as to the enforceability of the Fee Advancement Provision. *See Altruis Grp., LLC v. Prosight Specialty Mgmt. Co.*, No. 1:21-cv-10757 (MKV), 2023 WL 2242048, at *4 (S.D.N.Y. Feb. 27, 2023) (declining to entertain request for declaratory relief in light of comparable breach of contract claim).

restyled breach of contract claim, which is prohibited under New York law. *See Air Atlanta Aero Engineering Ltd. v. SP Aircraft Owners I, LLC*, 637 F. Supp. 2d 185, 197 (S.D.N.Y. 2009) ("A cause of action alleging an account stated cannot be utilized simply as another means to attempt to collect under a disputed contract.") (quoting *Grinnell v. Ultimate Realty, LLC*, 832 N.Y.S.2d 244, 245 (2d Dep't 2007)).

Moreover, even if this Court were to find the Fee Advancement Provision enforceable, Plaintiff's cause of action for an account stated nevertheless fails to state a claim. To state a claim for account stated, a plaintiff must prove the following three elements: "(1) an account was presented; (2) it was accepted as correct; and (3) the debtor promised to pay the amount stated." *Zim Am. Integrated Shipping Servs. Co. v. Sportswear Grp., LLC*, No. 20-cv-4838 (LJL), 2021 WL 5450117, at *8 (S.D.N.Y. Nov. 18, 2021). The Amended Complaint fails on all three fronts. First, Plaintiff never presented a specific account, such as an invoice. *See id.* ("An account stated is an account, *balanced and rendered*, with an assent to the balance either express or implied.") (citation omitted) (emphasis added). Second, Defendants never accepted any purported liability incurred and objected within a reasonable time. And finally, the Fee Advancement Provision is insufficient to qualify as either an express or implied promise. *See id.* ("There can be no account stated where no account was presented or where any disputed about the account is shown to have existed.") (citation omitted).

## IV.    This Action Should Be Dismissed or Transferred to Texas Under the First-to-File Rule

As described above, the underlying dispute giving rise to this action is narrow in scope, calling only for resolution of whether the Fee Advancement Provision has triggered an enforceable obligation for Defendants to pay Plaintiff its fees incurred in the Texas Action. And considering this narrow question presented, for all the reasons discussed above, this Court should simply

dismiss this case entirely. However, to the extent this Court is inclined to construe the Amended Complaint more broadly, this case would become increasingly similar to the Texas Action and should be outright dismissed or transferred to the Southern District of Texas under the first-to-file doctrine.

Under the first-to-file doctrine, "[w]here two competing lawsuits have been filed" there is a "rebuttable presumption that the first suit should have priority." *See Louise Paris, Ltd. v. Fabric Selection, Inc.*, No. 17 Civ. 5697 (JSR), 2017 WL 4776734, at *2 (S.D.N.Y. Oct. 6, 2017) (internal quotation omitted). There are only two exceptions to this rule: "(1) where 'special circumstances' warrant giving priority to the second suit and (2) where the 'balance of convenience' favors the second-filed action." *Id.* Special circumstances exist "where the first-filed lawsuit is an improper anticipatory declaratory judgment action," such as when it is made "under the apparent threat of a presumed adversary filing the mirror image of" it in another court. *Id.* Generally, such threats must be "direct" and include "specific warnings as to deadlines and subsequent legal action." *Id.*

To the extent the Court construes this action as concerning the Engagement Agreement more broadly, such a reading places this action squarely within the parameters of the Texas Action. For purposes of the first-to-file doctrine, the two proceedings are similar enough to privilege the Texas Action over this action. *See Burns v. County of Nassau*, 337 F. Supp. 3d 210, 213 (E.D.N.Y. 2018) ("When determining whether to apply the first-filed doctrine, the court considers whether the lawsuits at issue assert the same rights, and seek relief based upon the same facts. The lawsuits need not be identical, but the claims and rights raised in the two actions must not differ substantially.") (internal quotations and citations omitted). While the *fees in dispute* differ in the two proceedings, both relate back to the Engagement Agreement.

Moreover, none of the exceptions that would preclude the Court from applying the first-to-file rule apply. Plaintiff did not make a specific threat to file suit before Defendants filed the Texas Action. Nor did Plaintiff file this suit immediately after the Texas Action was filed. *Compare Jewel America v. Frontstep Sols. Grp., Inc.*, No. 02 Civ. 1328 (RO), 2002 WL 1349754, at *1 n.1. (S.D.N.Y. June 20, 2002) ("[t]he bulk of the precedent in this circuit is that the first filed rule is usually disregarded where the competing suits were filed only days apart"). Moreover, the balance of convenience weighs heavily in favor of the Texas Action. Other than Plaintiff being a New York lawyer with an office in New York, there are no other ties between New York and the underlying action. By contrast, all of the actions that give rise to Plaintiff's claims occurred in Texas.

## CONCLUSION

For all of these reasons, Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

Dated: April 07, 2025
New York, New York

**BAKER & HOSTETLER LLP**

By: */s/ Patrick T. Campbell*
Patrick T. Campbell
Luke E. Record
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
pcampbell@bakerlaw.com
lrecord@bakerlaw.com

*Attorneys for Defendants 4M
Investments, LLC and Ted B. Miller, Jr.*

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing document complies with the word count limit set forth in Local Civil Rule 7.1. I relied on the word count of the word-processing system used to prepare the document. The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 7,409 words.

Dated: April 07, 2025
New York, New York

**BAKER & HOSTETLER LLP**

By: */s/ Patrick T. Campbell*
Patrick T. Campbell
Luke E. Record
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
pcampbell@bakerlaw.com
lrecord@bakerlaw.com

*Attorneys for Defendants 4M*
*Investments, LLC and Ted B. Miller, Jr.*