UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WOOLERY & CO., PLLC,<br><br>Plaintiff,<br><br>-against-<br><br>4M INVESTMENTS, LLC and TED B. MILLER, JR.,<br><br>Defendants. | Case No.: 1:25-cv-00985-MKV |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED VERIFIED COMPLAINT**

**BAKER & HOSTETLER LLP**
Patrick T. Campbell
Luke E. Record
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
pcampbell@bakerlaw.com
lrecord@bakerlaw.com

*Attorneys for Defendants 4M Investments, LLC and Ted B. Miller, Jr.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT ........................................................................................................................ 1

I. This Court Does Not Have Personal Jurisdiction Over Defendants ................................... 1

A. Plaintiff's Claims Are Not Substantially Related to Defendants' Limited Alleged New York Activities ........................................................................ 1

B. Defendants Do Not Have Sufficient Minimum Contacts With New York ............ 3

II. The Southern District of New York Is Not the Proper Venue for This Action .................. 5

III. The Amended Complaint Fails to State Any Claims for Relief Under Rule 12(b)(6) ......................................................................................................... 7

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott, Duncan & Wiener v. Ragusa*,
214 A.D.2d 412 (1st Dep't 1995) ....................10

*Agency Rent a Car Sys., Inc. v. Grant Rent a Car Corp.*,
98 F.3d 25 (2d Cir. 1996)....................3

*Bazooka Cos., Inc. v. Classic Confections Enters., Inc.*,
2022 WL 2473603 (S.D.N.Y. July 6, 2022) ....................7

*Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
467 Fed. App'x. 4 (2d Cir. 2012)....................8

*Bozell Grp., Inc. v. Carpet Co-op of Am. Ass'n, Inc.*,
2000 WL 1523282 (S.D.N.Y. Oct. 11, 2000) ....................2

*Catlin Indem. Co. v. New England Law/Boston*,
2016 WL 447849 (S.D.N.Y. Feb. 4, 2016)....................5, 6

*Matter of Cooperman*,
83 N.Y.2d 465 (N.Y. 1994) ....................8, 9

*Cosa Xentaur Corp. v. Bow*,
2014 WL 1331030 (E.D.N.Y. Mar. 31, 2014) ....................5

*In re Ernst*,
382 B.R. 194 (S.D.N.Y. Feb. 13, 2008)....................10

*Fedele v. Harris*,
18 F. Supp. 3d 309 (E.D.N.Y. 2014) ....................6

*Fischbarg v. Doucet*,
9 N.Y.3d 375 (2007) ....................3

*Five Star Logistics LLC v. Innovasian Cuisine Enters. Inc.*,
2022 WL 17155810 (Sup. Ct. N.Y. Cnty. Nov. 22, 2022) ....................5

*George Reiner & Co., Inc. v. Schwartz*,
41 N.Y.2d 648 (N.Y. 1977) ....................2, 3

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*,
763 F.2d 55 (2d Cir. 1985)....................2

*I.M.D. USA, Inc. v. Shalit*,
92 F. Supp. 2d 315 (S.D.N.Y. 2000)....................6

*Irrigation Tech. Leasing Assocs., Inc. v. Superior Farming Co.,*
1991 WL 274479 (S.D.N.Y. Dec. 10, 1991)....................6

*Johnson v. Ward*,
4 N.Y.3d 516 (2005)....................1

*Kelly v. MD Buyline, Inc.*,
2 F. Supp. 2d 420 (S.D.N.Y. Apr. 1, 1998)....................3, 4

*Keybanc Cap. Markets Inc. v. Extreme Steel Inc.,*
710 F. Supp. 3d 239 (S.D.N.Y. 2024)....................9

*Kogan Law Group, P.C. v. Brace*,
2020 WL 5038764 (S.D.N.Y. Aug. 26, 2020)....................7

*PaineWebber, Inc. v. Westgate Grp., Inc.*,
748 F. Supp. 115 (S.D.N.Y.1990)....................4

*Pramer S.C.A. v. Abaplus Intern. Corp.*,
76 A.D.3d 89 (1st Dep't 2010)....................5

*Ravelombonjy v. Zinsou-Fatimabay*,
632 F. Supp. 3d 239 (S.D.N.Y. 2022)....................7

*Reiner v. Durand*,
602 F. Supp. 849 (S.D.N.Y. 1985)....................3

*Schindler v. Lyon*,
2013 WL 4544263 (E.D.N.Y. Aug., 28, 2013)....................2

*Schomann Int'l Corp. v. Northern Wireless, Ltd.*,
35 F. Supp. 2d 205 (N.D.N.Y. 1999)....................2

*Spiegler v. Mish Mish Inc.*,
2023 WL 6612646 (S.D.N.Y. Oct. 11, 2023)....................8

*Ween v. Dow*,
35 A.D.3d 58 (1st Dep't 2006)....................9

*White Diamond Co. v. Costco, Inc.*,
436 F. Supp. 2d 615 (S.D.N.Y. 2006)....................10

**Statutes**

28 U.S.C. § 1391(b)(2)....................5, 7

28 U.S.C. § 1404(a) ....................7

**Rules**

Fed. R. Civ. P. 12(b)(6)....................7

## PRELIMINARY STATEMENT

The Amended Complaint should be dismissed for lack of personal jurisdiction. Defendants' alleged New York contacts are far too attenuated to Plaintiff's claims for breach of the Engagement Agreement's Fee Advancement Provision[1] to justify being haled into this forum. If the Court declines to dismiss on this basis, it should dismiss Plaintiff's claims or transfer them to the SDTX for improper venue, because the alleged conduct related to Plaintiff's claims occurred in Texas.

Even if this Court were to find personal jurisdiction over Defendants and decide that venue in this District is proper, the Amended Complaint fails to state a claim upon which relief can be granted. Mr. Miller is not a party to the Engagement Agreement and should be dismissed from all claims. Moreover, each of Plaintiff's claims against both Defendants should be dismissed because the Fee Advancement Provision is void as against public policy. Plaintiff also fails to plead any of the required elements for an account stated claim.

## ARGUMENT

### I. This Court Does Not Have Personal Jurisdiction Over Defendants

#### A. Plaintiff's Claims Are Not Substantially Related to Defendants' Limited Alleged New York Activities

Specific jurisdiction requires an articulable nexus or substantial relationship between the claim asserted and defendant's New York contacts. *Johnson v. Ward*, 4 N.Y.3d 516, 519 (2005). Plaintiff alleges that Defendants breached the Fee Advancement Provision by failing to advance fees for defending against the Texas Action. However, Plaintiff relies upon Defendants' limited alleged New York contacts that relate only to the performance of the Engagement Agreement –

[1] All capitalized terms herein have the same meaning ascribed to them in the Mem. of Law in Supp. of Defs.' Mot. to Dismiss Pl.'s Am. Verified Compl., ECF No. 27.

not specifically to the alleged breach of the Fee Advancement Provision. Plaintiff's claims in this case do not seek unpaid fees for work performed during the engagement – that issue is being litigated in the Texas Action. Rather, Plaintiff's claims arise from the filing of the Texas Action and Defendants' refusal – in Texas – to advance fees to Plaintiff. Therefore, Plaintiff has not established the requisite nexus between its claims and Defendants' alleged New York contacts.

Plaintiff argues that claims based on breaches occurring outside New York can still arise from transactions in the forum. Pl.'s Mem. of Law In Opp'n To Defs.' Mot. to Dismiss Am. Verified Compl. ("Opp.") at 13, ECF No. 31. However, the cases cited by Plaintiff involve breaches stemming from conduct during the performance of the contracts. *See George Reiner & Co., Inc. v. Schwartz*, 41 N.Y.2d 648, 649 (N.Y. 1977) (dispute over conduct during employment contract); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 56 (2d Cir. 1985) (breach of franchise agreement stemming from conduct concerning store lease); *Schindler v. Lyon*, 2013 WL 4544263, at *6 (E.D.N.Y. Aug., 28, 2013) (suit for non-payment of legal fees accrued in course of engagement); *Schomann Int'l Corp. v. Northern Wireless, Ltd.*, 35 F. Supp. 2d 205, 206 (N.D.N.Y. 1999) (breach of installation agreement due to conduct during project). Had Plaintiff brought a claim for unpaid legal work in this Court, these cases, and Defendants' limited alleged contacts with New York, might be more germane. But given the narrow scope of Plaintiff's claims, so too must the universe of Defendants' alleged conduct be narrowly circumscribed.

Plaintiff also argues that its claims under the Fee Advancement Provision directly arise from the Engagement Agreement. Opp. at 14. Plaintiff's convoluted argument is that but for Defendants' decision to avail themselves of New York law by entering into the Engagement Agreement, its claims would not exist. *Id.* However, any contacts Defendants may have had with New York during the engagement were not proximate enough to Plaintiff's claims to confer

personal jurisdiction. *See Bozell Grp., Inc. v. Carpet Co-op of Am. Ass'n, Inc.*, 2000 WL 1523282, at *7 (S.D.N.Y. Oct. 11, 2000) (finding defendant's New York meetings insufficient to establish jurisdiction because they "were mere links in the chain of events leading to the claims for which relief is sought.").

This lack of relationship between Plaintiff's claims and Defendants' limited alleged New York contacts distinguishes many of Plaintiff's other cases as well,[2] including *Fischbarg v. Doucet*, 9 N.Y.3d 375, 384 (2007). The Court of Appeals found that a "sufficient nexus" existed between the attorney's fee claim and the former client's New York activities because, unlike here, the claim was based and dependent upon those activities. *Fischbarg,* 9 N.Y.3d at 384.

**B. Defendants Do Not Have Sufficient Minimum Contacts With New York**

Even if the Court finds a sufficient relationship between Plaintiff's claims and Defendants' limited alleged New York activities, the totality of those activities do not demonstrate that Defendants purposely projected themselves into New York.

Plaintiff's reliance on the four factors in *Agency Rent a Car Sys., Inc. v. Grant Rent a Car Corp.,* 98 F.3d 25, 29 (2d Cir. 1996), to establish jurisdiction is to no avail. Regarding the first factor pertaining to contractual relationship, Plaintiff claims that an out of state party's retention of a New York law firm alone constitutes a transaction of business in New York. Opp. at 6 (citing *Kelly*, 2 F. Supp. 2d at 430, and *Reiner,* 602 F. Supp. at 852). However, *Kelly* and *Reiner* acknowledged that this proposition was not settled, and instead grounded their decisions on additional contacts between the client and New York. For example, *Kelly* considered, among other things, that the client came to New York to discuss the engagement agreement terms prior to its

[2] *See, e.g., Kelly v. MD Buyline, Inc.*, 2 F. Supp. 2d 420, 426 (S.D.N.Y. Apr. 1, 1998) (concerning attorney breach of contract claim for unpaid fees accrued during attorney-client relationship); *Reiner v. Durand*, 602 F. Supp. 849, 851-52 (S.D.N.Y. 1985) (finding defendant's agent's visits to and communications with attorneys in New York in furtherance of attorneys' legal services under legal arrangement which could ultimately be tied back to sought fees).

execution, tasked the attorney with filing a litigation in New York, had customers and a corporate representative in New York, and terminated the engagement by sending a letter to the attorney in New York. *Kelly*, 2 F. Supp. 2d at 430. None of these additional contacts are present here.

Moreover, Defendants' alleged limited communications and contacts with New York under the Engagement Agreement do not rise to the level justifying jurisdiction over them. Plaintiff relies on a single business meeting Mr. Miller attended in New York, meetings in New York Plaintiff purportedly attended on Defendants' behalf, and communications with Plaintiff during the engagement. Opp. at 6–8. However, it is the "nature and quality," not the quantity, of Defendants' contacts in the forum that determine whether their activity is purposeful, and these alleged activities do not suffice. *See PaineWebber, Inc. v. Westgate Grp., Inc.*, 748 F. Supp. 115, 119 (S.D.N.Y.1990) (no jurisdiction over Texas defendant because series of frequent telephone calls and faxes to New York and one meeting in New York were not means by which defendant projected itself into a business transaction in New York).

*Rent a Car's* second factor, whether the Engagement Agreement was negotiated or executed in New York, does not support personal jurisdiction either. Defendants negotiated and executed the Engagement Agreement in Texas. Moreover, Plaintiff visited Texas to further negotiate and amend the agreement. While Plaintiff may have been physically located in New York, the totality of the circumstances, including Plaintiff's multiple solicitations to Defendants marketing its Texas connections and corporate expertise prior to the engagement, make clear that performance of the engagement was expected to occur in Texas.

Plaintiff has also failed to demonstrate how *Rent a Car's* third factor, the inclusion of a choice-of-law provision in the Engagement Agreement, bolsters the conclusion that personal jurisdiction should be found here without a corresponding forum selection clause. While Plaintiff

argues that the "absence [of a forum selection clause] does not detract from the reasonableness of Defendants' anticipating being haled into New York courts," that is precisely what it does. *See Five Star Logistics LLC v. Innovasian Cuisine Enters. Inc.*, 2022 WL 17155810, at *2 (Sup. Ct. N.Y. Cnty. Nov. 22, 2022) ("Choice of law and forum selection . . . are not the same thing. The parties agreed that New York Law would apply but they never agreed to litigate in New York Courts."). Ultimately, Plaintiff seems to concede that the added value of a choice-of-law provision is minimal, clarifying for the Court that "the Amended Complaint does not rely entirely, or even predominantly, on the Engagement Letter's inclusion of a choice-of-law provision in making its case for personal jurisdiction here." Opp. at 13.

Finally, with respect to *Rent a Car's* fourth factor, the mere fact that payments were remitted to Plaintiff in New York is not sufficient to establish personal jurisdiction, especially when all aspects of the transaction occurred out of state. *See Pramer S.C.A. v. Abaplus Intern. Corp.*, 76 A.D.3d 89, 96 (1st Dep't 2010).

## II. The Southern District of New York Is Not the Proper Venue for This Action

Plaintiff also has not demonstrated that venue complies with 28 U.S.C. § 1391(b)(2), which requires that "a substantial part of the events or omissions giving rise to the claim occurred" in the district.[3] Notably, courts impose an even stricter standard regarding the quality and degree of contact in the forum needed to establish venue than for personal jurisdiction. *See Catlin Indem. Co. v. New England Law/Boston*, 2016 WL 447849, at *2 (S.D.N.Y. Feb. 4, 2016). Thus, even if the Court does not dismiss for lack of personal jurisdiction because the acts giving rise to Plaintiff's claims occurred in Texas, those acts show that venue is not appropriate in this District.

[3] Plaintiff's assertion that its "choice of forum is presumptively entitled to substantial deference" puts the cart before the horse, and in any event does not apply "where the operative facts have little connection to the chosen forum." *See Cosa Xentaur Corp. v. Bow*, 2014 WL 1331030, at *13 (E.D.N.Y. Mar. 31, 2014) (discussing such presumption as a factor weighing against transfer once venue had already been established).

Plaintiff's argument that the factors courts weigh when assessing venue in breach of contract cases support venue in this District, *see* Opp. at 16, is unavailing. Regarding where the contract was substantially negotiated, Mr. Woolery's visit to Texas to renegotiate and amend the Engagement Agreement undermines any notion that it was "substantially negotiated" in New York. Moreover, Plaintiff's argument that "at least one" communication that has a substantial relationship to Plaintiff's claims – the November 22, 2024 letter invoking the Fee Advancement Provision – was transmitted from this District, Opp. at 17, is not correct, as that letter was sent by Plaintiff's counsel from Texas. *See Catlin Indem.*, 2016 WL 447849, at *2 (agency does not affect venue calculus, which focuses on actual location where acts that give rise to plaintiff's claim occurred). Regarding contract performance, Defendants' periodic payments into New York were for legal fees accrued during the engagement, which is not directly related to Plaintiff's claims. *See Fedele v. Harris*, 18 F. Supp. 3d 309, 317 (E.D.N.Y. 2014) (only events that directly give rise to claim are relevant for venue). In contrast, venue was found appropriate in *Irrigation Tech. Leasing Assocs., Inc. v. Superior Farming Co.* because the cause of action arose out of the defendant's failure to pay periodic lease payments for irrigation equipment it received during the lease. 1991 WL 274479, at *2 (S.D.N.Y. Dec. 10, 1991). Regarding breach, as Plaintiff acknowledges, there is a split of authority in the Second Circuit regarding the location of breach in a dispute arising out of a failure to make a payment. Opp. at 18. Given the focus of the venue analysis on the defendant's contacts, it is more consistent to locate the purported breach in Texas, where Defendants refused to pay, as opposed to where payment was to be received. *See, e.g.*, *I.M.D. USA, Inc. v. Shalit*, 92 F. Supp. 2d 315, 317-18 (S.D.N.Y. 2000) (finding venue improper in New York notwithstanding defendant's failure to remit payment into New York).

If this Court declines to find venue inappropriate under § 1391(b)(2), it should still transfer this case to the SDTX under the first-to-file rule and as a matter of efficiency and convenience under 28 U.S.C. § 1404(a). The locus of operative facts is in Texas and the parties have already been litigating there for months. *See Kogan Law Group, P.C. v. Brace*, 2020 WL 5038764, at *10-11 (S.D.N.Y. Aug. 26, 2020) (transferring case to forum in which litigation giving rise to fee dispute occurred). Moreover, Plaintiff admits that if Defendants were required to advance fees under the Fee Advancement Provision, such fees could be returned if they prevail in the Texas Action. Opp. at 22. It thus makes no sense – and is a waste of the parties' and this Court's resources – for this side issue to proceed in New York when dispositive litigation is proceeding in Texas. *See Bazooka Cos., Inc. v. Classic Confections Enters., Inc.*, 2022 WL 2473603, at *2 (S.D.N.Y. July 6, 2022) (finding it would be plainly inefficient for two different courts to decide intertwining issues in parties' dispute).

**III. The Amended Complaint Fails to State Any Claims for Relief Under Rule 12(b)(6)**

Even if Plaintiff established personal jurisdiction and venue, its causes of action should be dismissed under Rule 12(b)(6). As a threshold matter, Mr. Miller should be dismissed from all claims because he was not a party to the Engagement Agreement.

Plaintiff's argument that Mr. Miller can be held liable for breach anyway because he manifested an intent to be bound to the Engagement Agreement, Opp. at 20, fails because the Amended Complaint does not allege that he assumed any of its obligations. See *Ravelombonjy v. Zinsou-Fatimabay*, 632 F. Supp. 3d 239, 260 (S.D.N.Y. 2022) ("courts have found that a non-signatory assumed the obligations of an agreement where [he]: (1) participated in the negotiation of the contract; (2) micromanaged performance under the contract; (3) acknowledged it was the real party in interest; and (4) made payments on behalf of the signatory.") (citation omitted). The Amended Complaint does not allege that Mr. Miller micromanaged Plaintiff's performance. To

the contrary, it alleges that Plaintiff engaged in conduct, such as meetings with investors, without Mr. Miller present. *See, e.g.*, Am. Compl. ¶ 16. The Amended Complaint also does not allege that Mr. Miller acknowledged he was the real party in interest. Rather, it alleges that both Defendants benefited from the engagement. *See, e.g., id.* at ¶ 28. The statements in Mr. Woolery's Declaration and Plaintiff's opposition brief concerning Mr. Miller's purported individual benefits from the engagement should not be considered on this motion, but they are nevertheless insufficient to show he was the real party in interest. Finally, the Amended Complaint does not allege that Mr. Miller made any payments to Plaintiff in his individual capacity.

Plaintiff's reliance on the Engagement Agreement being addressed to Mr. Miller, Opp. at 21, similarly is unavailing. It was addressed to him in his capacity as President of 4M Investments and he signed it in that capacity. Miller Decl. Ex. G. Under New York law, "[a] corporate officer who signs on behalf of the corporation is not liable unless he signs as an individual (in addition to signing as the corporate representative)." *See Spiegler v. Mish Mish Inc.*, 2023 WL 6612646, at *3 (S.D.N.Y. Oct. 11, 2023) (quoting *Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 Fed. App'x. 4, 11 (2d Cir. 2012) (summary order)). Indeed, everything in the Engagement Agreement is addressed to 4M Investments, including the Fee Advancement Provision, which purportedly requires 4M Investments to advance fees, not Mr. Miller.

Nonetheless, Plaintiff's claims fail against both Defendants because the Fee Advancement Provision is unenforceable as a matter of public policy. Plaintiff argues that terms negotiated between sophisticated parties at arm's length should be enforced because such parties are presumed to understand the significance of the terms. Opp. at 21–22. However, due to their unique fiduciary relationship, attorneys and their clients do not deal at arms-length, and their fee agreements are not treated as ordinary commercial contracts. *Matter of Cooperman*, 83 N.Y.2d

465, 472 (N.Y. 1994). Rather, ethical principles place certain restrictions on attorney fee agreements that cannot be contracted away, including on terms that, as here, have the distinct potential to silence a client's complaint about fees and undermine the attorney's competent representation. *See id*. at 472 ("Because the attorney-client relationship is recognized as so special and so sensitive in our society, its effectiveness, actually and perceptually, may be irreparably impaired by conduct which undermines the confidence of the particular client or the public in general."). Tellingly, the only case Plaintiff cites that upholds an attorneys' fees provision is *Keybanc Cap. Markets Inc. v. Extreme Steel Inc.*, which is irrelevant because it involves a commercial contract, not an attorney fee agreement. 710 F. Supp. 3d 239, 247-48 (S.D.N.Y. 2024).

Plaintiff also attempts to evade the straightforward application of *Ween v. Dow*, 35 A.D.3d 58, 63 (1st Dep't 2006), on the grounds that its unfairness concern is inapplicable because the Fee Advancement Provision "is not unidirectional," and any fees advanced "could also be returned to Defendants upon a successful finding in their favor" (which is not in the Engagement Agreement). Opp. at 22–23. It is unclear exactly what Plaintiff means by "not unidirectional," but directionality is not dispositive. While the fee shifting provision in *Ween* was not mutual, the court found that, "[a]side from its lack of mutuality, the clause, even if not so designed, has the distinct potential for silencing a client's complaint about fees for fear of retaliation for the nonpayment of even unreasonable fees." 35 A.D.3d at 63. Accordingly, even if the Fee Advancement Provision were construed to be bidirectional, it would still fail under *Ween* because of the same chilling effect on clients. Moreover, the Fee Advancement Provision is broader than the one in *Ween*, as it purportedly requires Defendants to advance fees with respect to *any dispute* that may arise between the parties to the Engagement Agreement.

Nor does it matter that Defendants brought the Texas Action. Opp. at 23. Rulings that have struck down comparable fee advancement provisions have done so as a matter of law irrespective of the particular conduct of either party. *See, e.g.*, *In re Ernst*, 382 B.R. 194, 198 (S.D.N.Y. Feb. 13, 2008).

Finally, Plaintiff's account stated claim separately fails because the Amended Complaint does not allege that Plaintiff presented an account to Defendants, Defendants accepted any purported liability as correct, or Defendants promised to pay any amount. Plaintiff claims that it need not set a precise amount of advancement fees at this stage, Opp. at 24, but in fact, some "stated sum" is required. *White Diamond Co. v. Costco, Inc.*, 436 F. Supp. 2d 615, 624 (S.D.N.Y. 2006) ("an 'account stated' refers to a promise by a debtor to pay a stated sum of money which the parties had agreed upon as the amount due."). The Amended Complaint does not allege, nor could it, that Plaintiff ever submitted any sum of fees incurred in the Texas Action to Defendants. Moreover, contrary to Plaintiff's assertion, Defendants did object to Plaintiff's demand for fee advancement prior to this litigation. Notice of Removal Ex. 1 at 34, ECF No. 1 (in response to Plaintiff's November 24, 2024 letter, stating "any and all demands for compensation, damages, or reimbursement in the Letter are rejected."). Finally, because Defendants dispute the validity of the Fee Advancement Provision, Plaintiff cannot use it to establish that they promised to pay any amount. *See Abbott, Duncan & Wiener v. Ragusa*, 214 A.D.2d 412, 413 (1st Dep't 1995) ("There can be no account stated . . . where any dispute about the account is shown to have existed.").

## CONCLUSION

For all of these reasons, Defendants respectfully request that the Court grant their motion and dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

Dated: April 28, 2025
New York, New York

**BAKER & HOSTETLER LLP**

By: */s/ Patrick T. Campbell*

Patrick T. Campbell
Luke E. Record
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
pcampbell@bakerlaw.com
lrecord@bakerlaw.com

*Attorneys for Defendants 4M Investments, LLC and Ted B. Miller, Jr.*

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing document complies with the word count limit set forth in Local Civil Rule 7.1. I relied on the word count of the word-processing system used to prepare the document. The total number of words in this document, exclusive of the caption, table of contents, table of authorities, and signature block, is 3,328 words.

Dated: April 28, 2025
New York, New York

**BAKER & HOSTETLER LLP**

By: */s/ Patrick T. Campbell*
Patrick T. Campbell
Luke E. Record
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
pcampbell@bakerlaw.com
lrecord@bakerlaw.com

*Attorneys for Defendants 4M Investments, LLC and Ted B. Miller, Jr.*